**STATE of Missouri, Plaintiff-Respondent,**

v.

**Aaron Lee ROBERSON,**
**Defendant-Appellant.**

**No. 36890.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 9, 1976.

James C. Jones, Thomas J. Nold, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., George A. Peach, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Presiding Judge.

Aaron Lee Roberson was convicted by a jury in the Circuit Court of the City of St. Louis of Perjury, § 557.010 RSMo. 1969, and was sentenced as a Second Offender, § 556.-280 RSMo. 1969, by the trial judge to ten years in the custody of the Missouri Department of Corrections. § 557.020(2) RSMo. 1969. After an unsuccessful Motion for

New Trial was filed and overruled this appeal followed. We reverse and remand with directions.

This perjury charge had its genesis in a trial in the Circuit Court of the City of St. Louis wherein the defendant was charged with raping one Ray Gina Miller. During the course of the prior trial the defendant testified in his own behalf and was acquitted by the jury of that charge. Subsequently the Grand Jury of the City of St. Louis indicted him on this Perjury charge in that he committed perjury in the trial on the rape charge when "he testified that he escorted Ray Gina Miller to the Alton Dam Park on Labor Day, 1971, when on the contrary, in truth and in fact, the said Ray Gina Miller was not present at the Alton Dam Park on such date, and in fact was not ever seen by said Aaron Lee Roberson on Labor Day, 1971."[1] At the trial on this Perjury charge there was conflicting evidence concerning the whereabouts of Miss Miller on Labor Day, 1971, the State's evidence being that she was in Willengboro, New Jersey, on that date and the defendant's evidence that she was, as he had testified in the rape trial, at Alton Dam Park. The jury chose to believe the evidence proffered by the State and found the defendant guilty.

On appeal the defendant, as we shall hereinafter refer to Mr. Roberson, raises three Points for outright reversal and discharge, or, in the alternative, for reversal and remand for a new trial. He contends that the trial court erred in:

1) denying his motion for judgment of acquittal at the close of all of the evidence because the alleged false testimony was not material to the issues in the rape trial,

2) denying his motion for judgment of acquittal at the close of all of the evidence because the evidence produced at the trial of the perjury charge was insuf-

---

1. Near the conclusion of the State's evidence a Substitute Information in Lieu of Indictment adding allegations that the defendant had been twice convicted of felonies to bring him under the Second Offender Act was filed without objection and the trial proceeded on that pleading.

ficient to show the materiality of the alleged false testimony, and

3) permitting the defendant's entire testimony in the rape case to be read to the jury in the perjury trial because the defendant's testimony in the prior trial, except for that pertaining to the events of Labor Day, 1971, went beyond the scope of the perjury charge.

At the perjury trial the State produced as its witnesses Ray Gina Miller, the victim of the alleged rape, Eddie Watkins, Lillie Watkins, Joann Rainey, and Robert J. Lipa, the official court reporter who reported the testimony of the prior trial. Eddie and Lillie Watkins, husband and wife, testified in the perjury trial that on Labor Day, 1971, Ray Gina Miller was a guest at their home in Willengboro, New Jersey, and on that date attended a barbecue in the backyard of their home. Mr. Watkins is Miss Miller's uncle, and Lillie Watkins is Eddie's wife. Ray Gina Miller also testified that on Labor Day, 1971, she was in Willengboro, New Jersey, at the Watkins' home and attended a barbecue. Joann Rainey testified that on Labor Day, 1971, she was visiting at the home of Ray Gina Miller's parents in St. Louis and that although she went to Alton Dam Park with the defendant, David Taylor and Arlene Thomas, defendant's girl friend, she did not see Miss Miller at any time over the Labor Day weekend and more particularly at Alton Dam Park.

Mr. Lipa, the official court reporter, identified a transcript of the testimony of several witnesses at the trial on the rape charge, and read into evidence the entire testimony of the defendant given at that prior trial. Without objection he read defendant's testimony that he and Ray Gina Miller were neighbors and that on Labor Day, 1971, he and Miss Miller went to Alton Dam Park with David Taylor and Joann Rainey, and that while there he had intercourse with Miss Miller with her consent. Over objection that it was beyond the scope of the inquiry in the perjury charge, Mr. Lipa was permitted to read further from the transcript that defendant testified that between Labor Day, 1971, and December 23, 1971, he

went out with Miss Miller three or four times; that although he could not recall the specific dates, he had intercourse with her in his automobile in his backyard and also again in his automobile while parked in a friend's driveway. These intercourse incidents post-dated that of Labor Day, 1971, the first time he had ever taken her out. According to Mr. Lipa the defendant further testified at the trial on the rape charge that on December 23, 1971, he and Miss Miller went to the back room of a record shop at 2300 Union Boulevard in the City of St. Louis, owned by a friend of his, where they again engaged in an act of intercourse. He testified that the prosecutrix voluntarily engaged in this sex act and denied that he had threatened her in any way.

In the defense case defendant took the stand in his own behalf and repeated the testimony he had given at the trial on the rape charge as read into the record by the court reporter at that proceeding. Other witnesses who corroborated the defendant's testimony that Miss Miller was in St. Louis and went with him to Alton Dam Park on Labor Day, 1971, were his aunt, his sister-in-law, and his girl friend, Arlene Thomas. Arlene Thomas denied that she was with Miss Rainey and the others at Alton Dam Park but did testify that she saw Miss Miller at the defendant's home on Labor Day, 1971, during the morning hours.

In reviewing this judgment we must recognize that the perjury alleged in both the Indictment and the Substitute Information in Lieu of Indictment is that the defendant perjured himself in the trial of the rape charge when he testified that he "escorted" Miss Miller to the Alton Dam Park on Labor Day, 1971. At no time was he charged with lying when he testified that he and she engaged in an act of intercourse at that place on Labor Day, 1971. The issue presented here is whether the defendant perjured himself when he so testified, and that is dependent upon whether his testimony to this fact is material to the rape charge for which he was on trial.

The absence of record evidence from the prior trial has complicated our task in re-

solving the materiality issue. Neither the indictment nor the information—which one was the charging document in the rape trial we do not know—was introduced into evidence, and it is only through a careful scrutiny of the record in the trial of the perjury charge that we can discern that the rape allegedly took place on December 23, 1971. This we ascertain from the transcript of defendant's testimony from the prior trial and his testimony in the perjury trial. Miss Miller was not questioned about the events of December 23, 1971, in this trial nor was her testimony at the prior trial introduced into evidence in the trial of the perjury case. As a matter of fact there is no evidence in this record that she testified in the rape trial that the intercourse of December 23, 1971, was accomplished by means of force or threats or without her consent. And the record of this trial is devoid of any such evidence. For reasons we shall hereinafter demonstrate, this lack of evidence is fatal to the State's case and requires that we set aside the conviction in this case.

■ The essence of the crime of perjury is the wilful false swearing to a substantial definite material fact, *State v. Vidauri,* 305 S.W.2d 437, 440[2] (Mo.1957), and it is incumbent upon the State to not only allege but also to prove beyond a reasonable doubt that the defendant has sworn falsely to a material fact for the reason that false testimony to an immaterial fact is not perjury. *State v. Swisher,* 364 Mo. 157, 260 S.W.2d 6, 11[6] (banc 1953). Where there is no dispute as to what the testimony of the party charged with perjury was upon a certain issue presented to a court of competent jurisdiction, then it is purely a question of law for the trial court to determine whether such testimony as given was material to the issue thus presented. ˙*State v. Dineen,* 203 Mo. 628, 102 S.W. 480, 482[2] (Mo.1907). However, the materiality of the testimony on which perjury is assigned must be established by evidence and cannot be left to presumption or inference. *State v. Dineen,* supra. To prove materiality the State must introduce into evidence in a perjury trial enough of the records and testimony in the original trial to inform the trial court

wherein and how the assigned testimony became material. *State v. Chapman,* 253 Or. 596, 456 P.2d 89 (1969), *People v. Harris,* 102 Ill.App.2d 335, 242 N.E.2d 782 (1968).

With these principles in mind we proceed to consider defendant's first and second Points Relied On.

At first blush it would appear that where it is charged that a rape occurred in a record shop at 2300 Union Avenue in the City of St. Louis on December 23, 1971, evidence that the defendant "escorted" the alleged victim to a picnic at Alton Dam Park on Labor Day, 1971, would be immaterial. As we have heretofore stated, it is the burden of the State to prove the materiality of this evidence to support a perjury charge and we conclude that from this record the State has utterly failed to carry its burden.

■ We have searched the record in this perjury case for any evidence showing the materiality of the defendant's testimony in this respect to the rape charge. Evidence of the defendant's prior association with the prosecutrix or of prior intercourse with her would be material if there was a question of the identity of the alleged rapist or for the purpose of showing an inclination on the part of the prosecutrix to consent to the embraces of the defendant and thereby negate the question of the use of force or threats on his part to accomplish intercourse with her. *State v. Northern,* 472 S.W.2d 409, 410–411[1] (Mo.1971). However the defendant's identity was never in issue, and in the absence of any evidence that the prosecutrix testified at the prior trial that the defendant forced her to have intercourse with him the materiality of the evidence upon which the charge of perjury rests is not apparent. But the State has failed to establish in the record of this trial any evidence that the prosecutrix in the rape trial testified that the intercourse was forced upon her and against her will. Evidence of the type offered here becomes material only after such a showing.

We have found no Missouri case directly in point and neither party to this appeal has cited us one. By our own research we have

found, however, a case akin to this one. In *State v. Chapman*, supra, the defendant appealed a perjury conviction based upon his testimony in a trial for contributing to the delinquency of a minor that he 1) did not see the prosecutrix at a certain residence, 2) that he never went into the bedroom of that residence and, 3) that he did not ask the prosecutrix to go for a ride with him on the night of October 30, 1966. At the perjury trial the State introduced into evidence the indictment and that part of the transcript portraying the defendant's testimony, but no other parts of the record in the controlling case. The prosecutrix testified in the perjury trial but her testimony in the original case was not introduced into evidence and she said nothing about whether she had testified in the same manner in the first trial nor did she testify concerning any resulting sexual play or activity. In holding that there was a failure to show the materiality of the testimony of the defendant at the first trial the court, 456 P.2d l.c. 90, 91, said:

"There is no way to tell what the evidence showed in the first case concerning when, how, or under what circumstances the crime of contributing was committed. Without knowing the context in which defendant's untruthful statements were made it is impossible to tell whether they were offered to prove something which was sufficiently related to the issues in that case to have influenced the jury in its verdict. We are left to speculate as to the materiality of defendant's testimony. We do not believe that it can be inferred that the prosecutrix's testimony in the contributing case was the same as her testimony in the present one.

"The facts about which perjury was committed could have been such that they would have been material to a charge of contributing regardless of the context in which they occurred. The perjured testimony in this case was not about facts of that kind. There is nothing suggestive of sexual activity about being in a bedroom (not shown to have been with the prosecutrix), seeing her on a certain day and asking her to go for a ride. The nature of this activity is sufficiently innocuous that it cannot be inferred that it was material to a crime of contributing without the context in which it happened being shown. Had it been shown that the prosecutrix had testified in the first case as she did in the present case, an argument could be made that the activity in question was in such context that an inference could be drawn that sexual activity probably resulted from the automobile ride, and that anything resulting in sexual activity between the two was material to a charge of contributing regardless of when it occurred. As we have observed, however, there is nothing that justifies a conclusion that her testimony was the same in the first case."

See also, *People v. Harris*, supra, to like effect.

■ The fatal flaw in the State's case is that the defendant's testimony that he was with the prosecutrix at Alton Dam Park on Labor Day, 1971, can be neither material nor immaterial in itself, but its materiality must be determined in accordance with its relation to some extraneous matter. 70 C.J.S. Perjury § 11, p. 466. Materiality looks to the relationship between the propositions for which the evidence is offered and the issues in the case. McCormick on Evidence, p. 315. Therefore it is necessary that the State prove the falsity of the statement in the prior proceeding and prove what the issue or point in question in the former proceeding was, so the trial court can ascertain the materiality of the alleged false statement to the issue or point in question. This the State has utterly failed to do.

■ For the reasons aforesaid it is clear that the conviction of the defendant cannot be sustained because it was not shown in the present case how or in what manner the alleged false testimony in the prior trial became then and there material to the issues on trial in that case.

Although we have concluded that the State's evidence was insufficient to sustain the finding of the trial court that defend-

ant's testimony in the prior trial was material and the judgment and sentence must be reversed and set aside, we also conclude that the defendant is not entitled to a discharge as a matter of right for the reason that it does not appear that it would not be reasonably possible for the State to adduce sufficient evidence at another trial to sustain a perjury conviction. For that reason the cause is reversed and remanded for a new trial unless sufficient evidence cannot be adduced to prove the materiality of the alleged perjurious testimony, in which happenstance the cause should be dismissed and the defendant discharged. *State v. Patton*, 308 S.W.2d 641 (Mo. banc 1958), *State v. Miller*, 536 S.W.2d 524, 528[6] (Mo.App. 1976).

We do not reach defendant's third Point but would point out that although we have examined his Motion for New Trial we failed to find any specification therein which would have preserved this point for review. While specifications 5, 7 and 8 refer to errors with respect to the admission into evidence of the transcript of the defendant's testimony in the prior trial, none incorporate any complaint of the nature raised here on appeal for the first time. By failing to raise Point Three in his Motion for New Trial the defendant preserved nothing therein for this Court to review. *State v. Bowens*, 476 S.W.2d 495, 498[5] (Mo.1972), *State v. Henderson*, 510 S.W.2d 813, 821[12] (Mo.App.1974).

Judgment of conviction reversed and cause remanded for a new trial, or if sufficient evidence cannot be adduced at a subsequent trial to prove the materiality of the alleged perjurious testimony, then for further proceedings not inconsistent with this opinion.

SIMEONE and GUNN, JJ., concur.