THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ANDERSON, Defendant-Appellant.

First District (4th Division)    No. 77-558

Opinion filed February 2, 1978.

James J. Doherty, Public Defender, of Chicago (Anthony Pinell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and John J. Cronin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

In a bench trial James Anderson, defendant, was convicted of perjury and sentenced to one year probation. In this appeal defendant contends that the State failed to establish beyond a reasonable doubt that the statements in question were material or false.

We reverse the conviction.

The Illinois perjury statute provides in relevant part:

"(a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true.

(b) Proof of Falsity.

An indictment or information for perjury alleging that the offender, under oath, has made contradictory statements, material to the issue or point in question, in the same or in different proceedings, where such oath or affirmation is required, need not specify which statement is false. At the trial, the prosecution need not establish which statement is false." Ill. Rev. Stat. 1973, ch. 38, par. 32—2.

The charge against the defendant was based on allegedly contradictory statements made under oath by him in a Cook County grand jury proceeding and subsequently at a murder trial. Aside from a stipulation that defendant was 21 at the time of his perjury trial and an additional stipulation that defendant made the statements under oath, the only evidence at the perjury trial was the transcript of defendant's testimony at the two prior proceedings.

At the grand jury proceeding May 11, 1973, defendant first testified that he knew Gregory Gordon, Charles Jennings and Donald Jennings. A time reference for the rest of his testimony was then established by the following:

"Q. In the recent past, have you ever had any discussions with these three individuals, regarding any robberies?

A. Yes.

Q. Approximately how long ago did this discussion take place?

A. Not more than three days.

Q. How long ago?

A. No more than three days.

Q. Well, did you have a discussion with them at any time around Easter?

A. Yes.

Q. Would that have been before Easter or after Easter?

A. Before.

Q. And on this date, sometime shortly before Easter, is that correct?

A. Yes."

Defendant then testified that on that day, at the home of Charles Jennings, Charles asked him to go to Dixie Square to "make a rip with him." Defendant declined and Charles Jennings, Gregory Gordon, and Donald

Jennings left. Later that same day, at night, defendant returned to the same house. Charles called him upstairs, where he and defendant were alone, and told defendant "that they had made a beautiful rip, and they had knocked off some dude in Dixie Square." Charles also showed defendant a roll of money at that time. Defendant went downstairs to the kitchen where Gregory and Johnny [*sic*] Jennings were. There he saw a shotgun.

The first page of the transcript of the next proceeding, as presented in the trial of this matter, bears the caption "The People of the State of Illinois vs. Gregory Gordon, Charles Jennings, Donald Jennings." It also states "Charge: Murder, etc." The only testimony excerpted is that of the defendant, on direct examination by an Assistant State's Attorney. There was no cross-examination. Defendant first denied knowing Charles and Donald Jennings and Gregory Gordon; he then pleaded the Fifth Amendment as to this knowledge; finally he indicated that he did know them. Defendant denied being at the home of Charles and Donald Jennings on April 19, 1973. Defendant first denied, then admitted being at the home of Charles and Donald on April 20, 1973, at about noon. Charles and "Donnie" were there but not Gregory Gordon. He spent about 30 minutes there, talking and watching television with Charles and Donald. The conversation was about a baseball game and nothing else. He did not see any guns at the Jennings' home on April 20.

■■ This evidence fails to establish that defendant has made any false statements under oath. It is true that such falsity is established by proof that a defendant has made contradictory statements under oath. (*People v. Ricker* (1970), 45 Ill. 2d 562, 262 N.E.2d 456.) But the State has failed to establish that the testimony at the two proceedings concerned the same day. The testimony at the grand jury proceedings related to "sometime shortly before Easter." The testimony at the murder trial related specifically to April 19 and 20, 1973. Although the trial court apparently took judicial notice of the fact that in 1973 Easter fell on April 22, this does not eliminate the manifest uncertainty as to the date of the occurrences to which defendant testified before the grand jury. It is quite possible that defendant's grant jury testimony was about his activities on a day other than April 19 or April 20, 1973. Nor would it be sufficient to argue that at the murder trial defendant should have been aware that the State was seeking to elicit his testimony concerning the events to which he had previously testified. "Regardless of defendant's intention to answer falsely to certain questions, there can be no perjury so long as the witness spoke the truth." (*People v. Wills* (1976), 44 Ill. App. 3d 585, 591, 357 N.E.2d 1297, 1301, *appeal allowed* (1977), 65 Ill. 2d 584; see also *People v. White* (1974), 59 Ill. 2d 416, 322 N.E.2d 1.) The State cannot shift to a witness its burden of formulating precise and unambiguous questions.

(*Wills; Bronston v. United States* (1973), 409 U.S. 352, 34 L. Ed. 2d 568, 93 S. Ct. 595.) As was stated in *Bronston*:

> "It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, * * * any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a * * * perjury prosecution." (409 U.S. 352, 362, 34 L. Ed. 2d 568, 576, 93 S. Ct. 595, 602.)

In this cause the defendant directly responded to questions pertaining to two specific dates. His prior testimony concerning his activities on an unspecified date identified only as sometime shortly before Easter, or at best shortly before April 22, 1973, cannot be said to have established any contradiction. It certainly falls short of the requirement that perjury be proved by proof beyond a reasonable doubt that a defendant knowingly gave false testimony. *People v. Toner* (1977), 55 Ill. App. 3d 688, 371 N.E.2d 270.

■■ Although the failure to prove falsity in itself mandates a reversal, we also note the failure of proof of materiality. At defendant's trial only his testimony from the two past proceedings was presented to the court. The excerpt from the previous trial established that Donald Jennings, Charles Jennings, and Gregory Gordon were defendants in a trial which included a charge or charges of murder as well as other unspecified charges. The evidence presented at the perjury trial did not establish which of those defendants was charged with murder, whose murder was at issue, or any details of when and how the murder took place. Defendant Anderson's grand jury testimony apparently related to a robbery and murder in which the two Jennings brothers and Gordon were implicated. But the State failed to establish the link between this testimony and the murder trial. We cannot simply assume that the same murder was at issue. The State must prove in a perjury trial that the defendant's statements were material to the issue in question when the statements were made. (*People v. Harris* (1968), 102 Ill. App. 2d 335, 242 N.E.2d 782.) This is ordinarily done by the introduction into evidence of portions of the record of the proceedings at which the statements were made which would establish what the relevant issue was. (*Harris; Toner.*) By introducing only defendant's prior testimony, the State failed to establish what murder was at issue in the prior trial.

■■ When the State establishes falsity in testimony by proof of two inconsistent statements under oath, they need not establish which of the statements was false. (Ill. Rev. Stat. 1973, ch. 38, par. 32—2(b); *Ricker.*) But where the State fails to establish the materiality of these statements to the issues in question at both proceedings, it cannot be ascertained whether the unspecified false statement was material. We are confronted

with that situation here, as the State has not sought to establish which of defendant's statements were false, nor have they established whether defendant's statements at the murder trial were material to *that* murder. Therefore, aside from any determination as to lack of proof of falsity, this conviction must be reversed for lack of proof of materiality of the statements at issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

JOHNSON, P. J., and DIERINGER, J., concur.